[No. 3595.]

Jim Small v. The State.

Hog-theft — Evidence — Fact Case.— Appellant was convicted of the theft
of a hog, which was alleged and proved to belong to one F. It was in proof
that he claimed the hog by purchase from one D., and this claim was not
contested by the State, nor was there any proof, otherwise than by inference
or supposition, that he ever took or had possession of the hog. *Held,* that
the evidence is insufficient to sustain the conviction, because, at the utmost,
it proves no more than recent possession under an unconfuted claim of right.

Appeal from the County Court of Brown. Tried below before
the Hon. J. S. Cleveland, County Judge.

The conviction in this case was for the theft of a hog, the prop-
erty of J. J. Fitzinger, in Brown county, on the 5th day of Febru-
ary, 1885. A fine of $5 and one hour in jail was the penalty
imposed.

John Burns was the first witness for the State. He testified that,
some time in February, 1885, he drove a number of hogs from the
range to the pens near his house in Brown county, Texas. Among
those hogs were several in the mark of and belonging to G. W.
Small. One of the hogs in that bunch was a black hog, which had
some few scattering white hairs. It was about two years old, and
was then in the brand claimed by defendant,— an underslope in
each ear. Witness had often seen that hog before, and knew that
it belonged to J. J. Fitzinger. It was originally in Fitzinger's mark,
which was a hole in one ear and a swallow-fork in the other. Wit-
ness had once before seen this hog since its mark had been changed
from Fitzinger's mark. It then had a swallow-fork in each ear,
which was the mark of one Ruth. Still later, and before he drove
it to the pen, as stated, he again saw the same hog. Its mark had
then been changed to the underslope in each ear. While the hog
was in this last named mark, the defendant claimed to own it by
purchase from one Bill Dickinson. G. W. Small came to witness's
house on the same day that witness drove the hogs mentioned to his
pens, and drove this hog and several of his own to his house. The
mark of Doctor Gibson, who lived at Clio, was a hole in one ear
and a swallow-fork in the other. The alleged stolen hog would
weigh a hundred and fifty or a hundred and seventy-five pounds.
Ben Rue's mark was a swallow-fork in one ear and a split in the
other. This hog and the hogs of Rue and Ruth ran on the same
range.

G. W. Small, the defendant's father, testified that some time in February, 1885, he drove a bunch of hogs from John Burns's house to his house. Some of these hogs were in his mark, some in defendant's, and some in the marks of other people. Of these hogs witness killed some and turned others out. Among the hogs driven by him was a two-year-old black or black spotted hog in defendant's mark. Witness did not kill that hog, or turn it out. Witness supposed that defendant got it, though he did not see him get it. It was the practice of most of witness's acquaintances to take hogs in their mark, wherever they found them.

J. J. Fitzinger testified, in substance, that he lived in Brown county, within a mile or a mile and a half of the defendant's house. Witness's mark was a hole in the left and a swallow-fork in the right ear. In several instances he had got the order of the mark reversed through carelessness, or haste or defective sight. Witness changed his mark during the fall of 1884 on all of his hogs except a black and white spotted one that he could not catch. He never gave his consent to the taking of this hog to the defendant or any other person.

The motion for new trial raised the question discussed in the opinion.

*S. P. Burns* and *Maples & Maxwell*, for the appellant.

*J. H. Burts*, Assistant Attorney-General, for the State.

HURT, JUDGE. This conviction was for the theft of a hog, alleged to be the property of J. J. Fitzinger.

The evidence in this case is very meagre indeed. Witness Burns drove to his place a bunch of hogs, among which was a black and white spotted hog, marked with an underslope in each ear. The witness said that the defendant claimed this mark, to wit, the underslope in each ear. Burns had frequently seen this hog on the range prior to the time when he drove them to his place. When he first saw it, it was marked with a hole in one ear and a swallow-fork in the other. This was the mark of Fitzinger.

Later on he saw it, and the mark had been changed to a swallow-fork in each ear, and when last seen by Burns it was marked with an underslope in each ear; which mark was claimed by the defendant. This was not only the defendant's mark, but he claimed the black and white spotted hog in question, through purchase from one Bill Dickinson. Burns knew this hog to be the property of the prosecutor Fitzinger.

On the same day that Burns drove the hogs to his pen, G. W. Small drove them to his house. In this bunch there were some in G. W. Small's mark, some in the mark of the defendant, and some in the mark of other persons. G. W. Small killed some and turned out some, but did not turn out those in the mark of the defendant. The spotted hog marked with an underslope in each ear was in the bunch taken by G. W. Small to his place, and was taken by defendant from his father's, as was supposed by G. W. Small, to defendant's house. G. W. Small simply supposed that the defendant had taken the hog from his pen, because of its being in his mark; not that he had seen him take it, nor that the defendant had confessed that he took it. Burns was certain that this hog was the property of Fitzinger.

These are, substantially, all of the criminative facts of the case. What inculpatory fact is there in this case upon which this conviction can be sustained? That he claimed a certain hog in his mark which belonged to another? This will by no means suffice. He not only claimed the mark and the identical hog, but also, as a basis for such claim, stated that he had purchased the hog from one Bill Dickinson. Was there any attempt on the part of the State to disprove this statement? None whatever.

Again, was the defendant ever shown to have been in possession of the hog? Only by inference. His father supposed, as the hog was in his mark, that he took it from his pen with the rest of the hogs which belonged to him.

But, suppose the proof was positive that he did take the hog from his father's pen, and carried it to his house, this would simply amount to recent possession and nothing more, which is not sufficient to convict; the rule being that recent possession of stolen property, unexplained when called upon directly or circumstantially to explain, will warrant a conviction of theft.

We are of the opinion that the verdict is not supported by the evidence, and that the court below should have granted a new trial. The judgment is therefore reversed and the cause remanded.

*Reversed and remanded.*

[Opinion delivered June 3, 1885.]